Caleb LH Marker (SBN 269721)
Email: caleb.marker@zimmreed.com
Jessica M. Liu (SBN 358713)
Email: jessica.liu@zimmreed.com
**ZIMMERMAN REED LLP**
6420 Wilshire Blvd, Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
Fax: (877) 500-8781

[Additional Attorneys for Plaintiff and the Proposed Class Listed on Back Cover]

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEPHEN TOWER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEST BEDDING, INC. and DOES 1–10,<br><br>Defendants. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Stephen Tower, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Nest Bedding, Inc. ("Defendant" or "Nest Bedding") and makes the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE OF THE ACTION**

1.     This is a case concerning deceptive representations and omissions made by Defendant through its misleading and unlawful pricing, sales, and discounting practices on its website, which directly violate California law and deceive the reasonable consumer.

2.     Defendant sells and markets mattress and bedding products online through the Nest Bedding website, www.nestbedding.com.

3.     The products at issue are all goods that have been offered at any time on Nest Bedding's website, at a sale or discounted price from a supposedly higher former price displayed to

CLASS ACTION COMPLAINT FOR DAMAGES

the consumers in the product ad, where that higher price was not actually offered in compliance with the law (the "Products").

4. Defendant's website listed various items on sale or discount, and pictured a stricken, supposedly former or prevailing market price, next to the current purported "sale" price. However, the former or prevailing market price listed next to the sales price was not actually the former or prevailing market price at which the product was sold in the previous three months. Instead, it was a false or inflated price used to trick consumers into believing they were receiving a discount on their purchase. Such former prices are false because the item had not been listed for sale or sold on the website in the previous three months at the listed former price.

5. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

6. Section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertisement. Cal. Bus. & Prof. Code § 17501. The statute specifically prohibits the type of fake discount employed by Defendant where the advertised former price is not the prevailing price during the specified timeframe.

7. Upon investigation, all or nearly all of the reference higher prices found on the website were false and misleading. They are not former or prevailing market prices at which the Products were offered on the website during the previous three (3) months.

8. Plaintiff—like other customers across the United States—fell prey to Defendant's false, deceptive, and misleading discount scheme. As a result, Defendant has earned money selling Products at misrepresented discounts that do not actually exist.

9. When purchasing from Defendant, Plaintiff relied on Defendant's representations that the Product was on sale and previously sold at the former strikethrough price listed next to the sale price. These representations were false.

10. Defendant's conduct violated and continues to violate the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; California's False Advertising

2

CLASS ACTION COMPLAINT FOR DAMAGES

Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.; and the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*. Defendant's conduct also constitutes negligent misrepresentation, and has unjustly enriched Defendant by the sale of these Products.

11.    Accordingly, Plaintiff brings this civil action to put an end to Defendant's unlawful conduct. Through this class action lawsuit, Plaintiff seeks monetary damages, restitution, and declaratory and injunctive relief on behalf of the proposed Class.

### PARTIES

12.    Plaintiff Stephen Tower is a citizen and resident of Manchester, New Hampshire.

13.    Defendant Nest Bedding, Inc. is a California corporation with its principal place of business in Chico, California. Defendant is an online retailer that sells products in California and across the United States.

14.    Defendants Does 1–10 were responsible in some manner for the injuries and damages caused to Plaintiff and the Class, but their identities and/or roles are not yet known.

### JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which (1) there are at least 100 members, (2) the matter in controversy exceeds $5,000,000 exclusive of interest and costs, and (3) Plaintiff and members of the putative Class are citizens of a state that is different from the states in which Defendant is a citizen.

16.    This Court has personal jurisdiction over Defendant because it has contacts with California that are so continuous and systematic that it is essentially at home in this state. Defendant sold Nest Bedding products to consumers in California. Defendant's principal place of business, which on information and belief is the location where Defendant's marketing decisions are made and promulgated from, is in California. Defendant regularly conducts and solicits business in California, provides products to persons in the State of California, maintains an interactive commercial website, offers to ship products, and does ship products to California, allows customers in California to order products, and derives substantial revenue from customers in California.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's and the Class Members' claims occurred in this District, and Defendant is subject to the Court's personal jurisdiction.

## BACKGROUND FACTS

18.     Defendant markets and sells mattresses, pillows, and bedding on its website.

19.     Defendant claims on its website that it has over 1 million customers.



20.     Defendant, through its website, has sold millions of units of merchandise to customers in California and nationwide.

## I.     Nest Bedding's Fake Discount Scheme

21.     Defendant creates the false impression that its Products' regular or former prices are higher than they truly are.

22.     On any given day, most if not all products on Defendant's website are represented as being discounted from a substantially higher former price. On individual listing pages and category listing pages, the supposed mark-downs are represented to consumers by (1) prominently displaying a "strikethrough" price, or former price, next to a sale price, and (2) depicting the sale price in bold text adjacent to the former price. An example screenshot is provided below:

**[Image is on the next page.]**

CLASS ACTION COMPLAINT FOR DAMAGES



23.    Defendant also advertises site-wide "limited-time" discounts from former prices. These include, for example, discounts offering "40% off" and "50% off" for a limited time period—even displaying a count-down clock to induce purchases under the guise that the purported discounts are only available for a limited time.

24.    As shown below, in early 2024, Defendant ran continuous sitewide discounts on its products during at least January 2024 and April 2024. As of May 23, 2025, Defendant continued to advertise site-wide discounts accompanied by a countdown clock.

**January 21, 2024**



CLASS ACTION COMPLAINT FOR DAMAGES

**March 15, 2024**



**April 15, 2024**



**May 23, 2025**



CLASS ACTION COMPLAINT FOR DAMAGES

25. Far from being time-limited, however, Defendant's discounts are routinely available on the website. These pricing and advertising practices are deceptive and pressure consumers, like Plaintiff, into purchasing products from Defendant at an inflated price, or into purchasing products that they would not have purchased but for the deception. Defendant intends to mislead consumers into believing that they are getting a bargain by buying products from its website on sale and at a substantial and deep discount. For many if not all products, Defendant did not offer or sell the products on the website prevailingly at the former price for the three months immediately preceding the listing of the sale. Therefore, the former price is artificially inflated and the advertised discounts are deceiving.

26. The above photos are just a few examples from Defendant's website that show how it consistently lists its false discounts on the website.

27. In addition to its sitewide discounts, Nest Bedding lists all or nearly all of its products at a continuous discount. For example, as shown below, Defendant listed the Queen Size Sparrow Signature Hybrid Mattress at various discounts ranging between 10% and 25% off from February 2024 to May 2024. During this entire four-month period, Defendant used the same false former price of $2,132.00 for the mattress despite not offering the mattress at that price. Images of this product listed on Nest Bedding's website are shown below.

**[Images are on the next page.]**

**February 13, 2024**



**February 27, 2024**



CLASS ACTION COMPLAINT FOR DAMAGES

**April 13, 2024**



**April 17, 2024**



CLASS ACTION COMPLAINT FOR DAMAGES

**May 2, 2024**



**May 9, 2024**



CLASS ACTION COMPLAINT FOR DAMAGES

**May 22, 2024**



28.    As evidenced by its own website, Nest Bedding did not sell the Queen Size Sparrow Signature Hybrid Mattress for the former price of $2,132 within at least the four months from February 2024 to May 2024. Defendant's discounts, and its advertising, were therefore false.

29.    As another example, Defendant listed the product Bamboo Sheet Set + Pillowcases at a continuous discount on its website from at least December 2024 through May 2025. Defendant claimed that the former price was $162, despite the product being perpetually discounted during this time period and likely longer.

**[Images are on the next page.]**

CLASS ACTION COMPLAINT FOR DAMAGES

**December 24, 2024**



**January 6, 2025**



CLASS ACTION COMPLAINT FOR DAMAGES

**January 22, 2025**



**March 5, 2025**



CLASS ACTION COMPLAINT FOR DAMAGES

**May 23, 2025**



30.     The examples provided herein are representative of Defendant's common and typical advertising practices on its website, including during the time period preceding Plaintiff's purchase.

31.     Upon information and belief, Defendant has taken steps to prevent its past pricing from being publicly accessible on internet archival websites.

32.     Despite knowing the falsity of its Products' purported former prices, Nest Bedding continued to falsely advertise the former price of its Products in order to coerce customers into making purchases based on the mistaken belief that they were receiving a discount, resulting in Plaintiff and other consumers suffering harms. This conduct violates California statutes designed to protect consumers from exactly this type of deception.

*A.  Plaintiff Purchased Defendant's Product that Was Falsely Advertised as Discounted*

33.     On or around November 28, 2023, Plaintiff Tower purchased a King Size Medium Quail Responsive Foam Mattress (the "Product") from Nest Bedding's website (https://www.nestbedding.com/) for $1,199.20. At the time of his purchase, Nest Bedding was advertising the Product as having a former price of $1,499.00, and a discounted price of $1,199.20. He made this purchase while living in New Hampshire.

CLASS ACTION COMPLAINT FOR DAMAGES

34.    Upon information and belief, the Product had not been offered at its former price in the three months preceding November 28, 2023. Indeed, as shown in the below screenshots in May and August 2025, Defendant was still advertising the Product with fictitious and unsupported former prices on its website:

**May 23, 2025**



[Image is on the next page.]

CLASS ACTION COMPLAINT FOR DAMAGES

**August 12, 2025**



35.    As shown by the images above, Defendant has continued to falsely advertise the $1499.00 reference price as the Product's former price.

36.    Defendant falsely represented that the Product had a certain regular or former price (the reference price) and that Plaintiff was receiving a substantial discount. In truth, the Product Plaintiff purchased was not substantially marked down or discounted, and any discount he was receiving was exaggerated.

37.    Plaintiff relied on Defendant's representations on the website that the Product was being offered at a discount and that previously the Product was listed and sold on the website at the stated reference price. Plaintiff would not have purchased the Product if he had known the Product was not discounted as advertised, and that he was not receiving the advertised discount.

38.    Upon information and belief, Defendant enacts or has enacted the same false discount scheme with many, if not all, of the products listed on its website.

39.    Based on Defendant's numerous advertisements, reasonable consumers would reasonably believe that the former prices Defendant advertises were actually the price at which the goods were offered for sale and sold at before the supposedly "limited-time" offer went into effect.

CLASS ACTION COMPLAINT FOR DAMAGES

In other words, reasonable consumers would reasonably believe that the former prices Defendant advertises represent the amount that consumers formerly had to pay for Defendant's goods, before the purportedly limited-time sale began.

40.    Reasonable consumers would also believe that the former prices Defendant advertises represent the true comparison price for the Products, and are the prevailing price for those Products, and that they are receiving reductions from those former prices in the amounts advertised. In truth, however, Defendant persistently offers sales at lower prices and only gives the false appearance of discounts off the purported former prices it advertises. As a result, Defendant's pricing and purported discount advertising are false. The former prices Defendant advertises are not actually Defendant's regular, former, or prevailing prices for the Products. The former prices do not represent the true comparison price for the Products because the Products are consistently available for less than the advertised former price, and customers did not have to formerly pay that amount to get those items within the statutory time period, or longer. The purported discounts Defendant advertises are not the true discount the customer is receiving, to the extent they actually receive a discount at all.

### B. The Former Prices Are Not the Prevailing Market Price of the Products, Including During the Rolling 90-day Period Prior to the Offering and/or Purchase

41.    Defendant is the manufacturer of the Products, and on information and belief the overwhelming majority of the Products are sold by Defendant directly to consumers through its website.

42.    Defendant is a direct-to-consumer brand that primarily sells its Products online. As the primary seller of the Product that Plaintiff purchased, Defendant sets the prevailing market price; most, if not all, sales are made at Defendant's prices because Defendant is the one making most of the sales.

43.    In short, because the Product is sold almost exclusively by Defendant on its website, it is most commonly sold for the discounted prices that are always available from Defendant. To the extent that certain other Products are sold through a third-party seller (such as Amazon) the third-party seller's prices for the Product are not the prevailing market price.

CLASS ACTION COMPLAINT FOR DAMAGES

44.     As of July 18, 2025 and through August 20, 2025, on information and belief, the Product has not been sold by any third-party seller. Upon investigation, Plaintiff was only able to identify minimal instances of any of Defendant's products sold by third parties.

45.     One such product, Tencel Sheet Set + Pillowcases, is advertised on Defendant's website as having a former price of $162, discounted to $81 (for Pewter color, Queen size). That same product specification is available on Amazon at $129, and has been that price for at least the three preceding months, according to tracking data available at Amazon tracking service Camel Camel Camel.

46.     Another product, Easy Breather Natural Latex Pillow, is advertised on Defendant's website as having a former price of $107, discounted to $32.10. That same product specification is available on Amazon at $32.10, and upon investigation, for the past three months, was offered at the former price of $107 for only one day, according to data available from tracking service Honey. That the product was offered for the "former" price for only one day in three months does not establish $107 as the prevailing price during that period, and in fact establishes the opposite.

47.     Upon information and belief, most of the Nest Bedding products that are sold anywhere are sold by Defendant on its website.

**II.     Research Shows That Reference Price Advertising Influences Consumer Behavior and Perceptions of Value**

48.     The effectiveness of Defendant's deceitful pricing scheme is backed by longstanding research.

49.     "By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."[1] Thus, "empirical studies indicate that, as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases."[2] For this

---

[1] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. PUB. POL'Y & MKTG. 52, 55 (Spring 1992).

[2] *Id*. at 56.

CLASS ACTION COMPLAINT FOR DAMAGES

reason, the Ninth Circuit has held that a plaintiff making a claim of deceptive pricing (similar to the claim at issue here) had standing to pursue his claim against the Defendant retailer. In doing so, the Court observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013).

50.    "[D]ecades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal."[3] According to academic studies, "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high."[4]

51.    Further, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher former price and/or market value at a substantial discount.

52.    Consumers who are presented with discounts are substantially more likely to make the purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[5] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[6]

---

[3] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It or Not*, J. OF CONSUMER AFFAIRS, Vol. 36, No. 2, at 287 (Winter 2002).

[4] *Id.*

[5] Khalid Saleh, *How Discounts Affect Online Consumer Buying Behavior*, Invesp, June 16, 2024, https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/ (last visited September 11, 2024).

[6] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers PR NEWSWIRE (April 25, 2018), https://www.prnewswire.com/news-releases/retailmenot-survey-deals-and-promotional-offers-drive-incremental-purchases-online-especially-among-millennial-buyers-300635775.html#:~:text=In%2DLanguage%20News-,RetailMeNot%20Survey%3A%20Deals%20and%20Promotional%20Offers%20Drive%20Incremental%20Purchases%20Online,finding%20a%20coupon%20or%20discount. (last visited September 11, 2024).

CLASS ACTION COMPLAINT FOR DAMAGES

53.     Another academic journal explains that "[r]eference price ads strongly influence consumer perceptions of value … Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when … the retailer highlights the relative savings compared with the prices of competitors … [T]hese bargain assurances (BAs) change consumers' purchasing behavior and may deceive consumers."[7]

54.     "[R]esearch has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."[8]

55.     "[R]eference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product."[9] This study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."[10]

56.     Accordingly, research confirms that deceptive advertising through false reference pricing is intended to, and does, influence consumer behavior by artificially inflating consumer perceptions of an item's value and causing consumers to spend money they otherwise would not have; purchase items they otherwise would not have; and/or purchase products from a specific retailer.

### A. Consumers Suffered Harm

57.     Based on Defendant's advertisements, reasonable consumers would expect that the listed reference prices are the regular or former prices at which Defendant usually sells its Products.

58.     Reasonable consumers would also expect that, if they purchase during the sale, they will receive an item whose actual regular or former price is the advertised regular or former price, and that they will receive the advertised discount from the regular or former purchase price.

---

[7] Joan Lindsey-Mullikin & ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. OF BUS. RESEARCH 67 (January 2011).

[8] Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. OF RETAILING 225 (2003).

[9] Jerry B. Gotlieb & Cyndy Thomas Fitzgeral, *An Investigation Into The Effects of Advertised References Prices On the Price Consumers Are Willing To Pay For the Product*, 6 J. OF APP'D BUS. RES. 1 (1990).

[10] *Id.*

CLASS ACTION COMPLAINT FOR DAMAGES

59.     Plaintiff and consumers paid a "price premium" for the Products. If the reference prices were omitted from the product listings, Plaintiff would not have purchased the Products.

60.     Also, as further described above, Plaintiff and consumers are more likely to buy the Products if they believe that the product is on sale and that they are getting Products with a higher regular or former price at a substantial discount.

61.     Thus, Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products that it would not be able to charge absent the misrepresentations described above.

62.     Therefore, Defendant's Products not only have a market value lower than the promised regular or former price; the value of the Products is also lower than the "sale" price. By using false reference pricing and false limited time sales, Defendant artificially drives up demand for the Products, and by extension, drives up the price of the Products. As a result, consumers were harmed because they received a product worth less than the price paid. Reasonable consumers would not have paid the prices charged had they known that the Products were rarely, if ever, offered for sale on the website at the former prices.

**III.     Defendant's Deceptive Pricing Practices Violate Federal and California State Law**

63.     The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). Specifically, the FTC prohibits such misleading price comparisons as the ones employed by Defendant:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the ***former price*** is the actual, bona fide price at which the article was offered to the public ***on a regular basis for a reasonably substantial period of time***, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an ***artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction*** – the "bargain" being advertised ***is a false one***; the purchaser is not receiving the unusual value he expects.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

(c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain," Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level—$7.50—and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" ***This is obviously a false claim***. The advertised "bargain" is not genuine.

(d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he ***never offered the article at all***; he might feature a price which was ***not used in the regular course of business***, or which was ***not used in the recent past*** but at some remote period in the past, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was ***not maintained for a reasonable length of time***, but was immediately reduce.

16 C.F.R. § 233.1 (emphasis added).

64.    The FTCA expressly prohibits the advertising of fictitious former prices, like the scheme employed by Defendant, regardless of whether the product advertisements and representations use the words "regular," "original," or "former" price:

(e) If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.

16 C.F.R. § 233.1.

65. Defendant's pricing scheme directly violates the FTCA.

66. In addition, Section 17500 of California's False Advertising Law ("FAL") prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This prohibition includes statements falsely suggesting that a product is on sale, when it actually is not.

67. Section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertisement. Cal. Bus. & Prof. Code § 17501.

68. In addition, California's Consumer Legal Remedies Act ("CLRA") prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

69. And finally, California's Unfair Competition Law ("UCL") bans unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

70. Here, as described in detail above, Defendant makes untrue and misleading statements about its prices. Defendant advertises former prices that are not its former prices and were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendant advertised goods with the intent not to sell them as advertised, for example, by advertising goods having certain former prices without the intent to sell goods at those former prices. Defendant made false and misleading statements of fact concerning the reason for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. Thus, Defendant engaged in unlawful and deceptive business practices.

## CLASS ALLEGATIONS

71. Plaintiff brings this action individually and on behalf of all others similarly situated. The proposed class is defined as:

> All persons who, during the applicable limitations period, purchased one or more items from nestbedding.com at a represented discount from a higher former price.

72.    Excluded from the Class is Defendant, its subsidiaries and affiliates, officers, directors, the members of their immediate families, and any entity in which any Defendant has a controlling interest, to include the legal representatives, heirs, successors, or assigns of any such excluded party. Also excluded are the judicial officer(s) to whom this action is assigned and the members of their immediate families.

73.    Plaintiff reserves the right to modify or amend the definition of the proposed Class, if necessary, before this Court determines whether certification is appropriate.

74.    This case is properly brought as a class action under Fed. R. Civ. P. 23, and all requirements are met for the reasons set forth in the following paragraphs.

75.    *Numerosity*. The members of the Class are so numerous that separate joinder of each member is impracticable. Upon information and belief, and subject to discovery, the Class consists of many thousands of members, the identity of whom are within the exclusive knowledge of Defendant and can be ascertained only by resorting to Defendant's records, discovery, and other third-party sources.

76.    *Commonality*. There are numerous questions of law and fact common to the Class relating to Defendant's business practices challenged herein, and those common questions predominate over any questions affecting only individual Class members. The common questions include:

- o    Whether Defendant's labeling, advertising, and marketing of the Products is false and misleading;
- o    Whether Defendant advertised false former prices on Products offered;
- o    Whether Defendant advertised price discounts from the false former prices on the Products offered;
- o    Whether the Products listed on Defendant's website were offered at their former price within the three months preceding purchases by Plaintiff and Class members;

CLASS ACTION COMPLAINT FOR DAMAGES

o Whether Defendant's misrepresentations were material to reasonable consumers;

o Whether Defendant engaged in unlawful or unfair conduct prohibited by the California UCL;

o Whether Defendant engaged in conduct prohibited by the California FAL;

o Whether Defendant violated the CLRA's prohibition on unfair methods of competition and/or unfair and deceptive practices;

o Whether Defendant violated the FTCA;

o Whether Defendant harmed Plaintiff and members of the Class;

o the proper measure of damages; and

o the declaratory and injunctive relief to which the Class is entitled.

77. *Typicality.* Plaintiff's claims are typical of the claims of the other Class members in that they arise out of the same wrongful business practices engaged in by Defendant, as described herein.

78. *Adequacy of Representation.* Plaintiff is an adequate representative of the Class because Plaintiff has sustained damage as a result of Defendant's uniform conduct. In addition:

o Plaintiff is committed to the vigorous prosecution of this action individually and on behalf of and all others similarly situated and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

o There is no hostility of interest between Plaintiff and the unnamed Class members;

o Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

o Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal work associated with this type of litigation.

79. *Predominance.* The questions of law and fact common to the Class as set forth in the "commonality" allegation above predominate over any individual issues. As such, the "commonality" allegations are restated and incorporated herein by reference.

CLASS ACTION COMPLAINT FOR DAMAGES

80.     *Superiority.* A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation and since the financial resources of Defendant are significant, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Defendant's misconduct will proceed without remedy. In addition, even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard that might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

81.     All conditions precedent to bringing this action have been satisfied and/or waived.

**FIRST CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**
**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**
**(On behalf of Plaintiff and the Class)**

82.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

83.     Plaintiff and Defendant are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17200.

84.     The UCL defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

85.     Defendant violated the UCL by engaging in "unlawful, unfair, and fraudulent business ats or practices" and engaging in "unfair, deceptive, untrue or misleading advertising," including advertising false and deceptive reference prices on its Products. Cal. Bus. & Prof. Code § 17200.

CLASS ACTION COMPLAINT FOR DAMAGES

a. *Unlawful Prong*

86.    As a result of engaging in the conduct alleged in this Complaint, Defendant has violated the UCL's proscription against engaging in "unlawful" conduct by virtue of their violations of the following laws:

(1)    **California Bus. & Prof. Code § 17501**: As further detailed in this Complaint, Defendant violated California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 and 17501.

(2)    **The Federal Trade Commission Act**: As detailed in this Complaint, Defendant violated 16 C.F.R. §§ 233.1 and 233.5.

(3)    **Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770(a)**: As alleged below, Defendant's conduct, individually and collectively, violates section 1770(a)(5), (7), (9), and (13) of the CLRA. Therefore, Defendant has also violated the UCL's "unlawful" provision.

87.    Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date. Unless restrained and enjoined, Defendant will continue to engage in the unlawful conduct described herein.

88.    Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the Class. As described herein, Defendant made false and deceptive advertisements and representations regarding the former prices of the Products it claimed were on sale. But for Defendant's unlawful and unfair conduct, Plaintiff and Class members would not have purchased the Products, or would not have purchased the Product at the price it was listed.

89.    Plaintiff has suffered injury in fact and has lost money as a result of Defendant's conduct.

90.    Accordingly, Plaintiff and Class Members seek restitution from Defendant of all money obtained from Plaintiff and the Class as a result of Defendant's unlawful acts.

b. *Unfair Prong*

91.    As a result of engaging in the conduct alleged herein, Defendant has violated the UCL's proscription against "unfair" business practices.

CLASS ACTION COMPLAINT FOR DAMAGES

92.     Under the UCL, a business act or practice is "unfair" if the Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

93.     Defendant's unfair conduct alleged in the Complaint is illegal, deceptive, unethical, and unscrupulous. Under federal and state law, making false and deceptive claims about products being marketed and sold to consumers violates the UCL.

94.     Defendant's deceptive marketing gave consumers the false impression that Products were regularly listed or sold on the website for a substantially higher price in the recent past than they actually were and, thus, led to the false impression that Defendant's products were being sold at a discount compared to the former price.

95.     Furthermore, these acts and practices offend public policy by violating the CLRA and the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code 17500, *et seq*.

96.     Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and injurious to consumers.

97.     Therefore, Defendant's conduct was and continues to be "unfair."

98.     Defendant's violations of the UCL continue to this day. Unless restrained and enjoined, Defendant will continue to engage in the unfair conduct described herein. Plaintiff would consider buying again from the Nest Bedding website if he knew that the pricing misrepresentations were halted, and if he had the opportunity to evaluate the actual prevailing price and actual discount prices of the Product.

99.     Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the Class members.

100.    The harm to Plaintiff and members of the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the unfair conduct described herein.

101.    Accordingly, Plaintiff and the Class seek restitution from Defendant of all money obtained from Plaintiff and the Class members as a result of Defendant's unfair conduct.

CLASS ACTION COMPLAINT FOR DAMAGES

### c. *Fraudulent Prong*

102. As a result of engaging in the conduct alleged herein, Defendant has violated the UCL's proscription against "fraudulent" business practices.

103. Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant affirmatively misrepresented the former prices of Products which, in turn, misled and deceived consumers into believing that they were buying Products at substantially discounted prices. Defendant's deceptive marketing gave consumers the false impression that its Products were regularly listed or sold on the website for a substantially higher price in the previous three months. Because Defendant misled Plaintiff and members of the Class, Defendant's conduct was "fraudulent."

104. Defendant's advertisements concerning the false former prices of Products on its website were fraudulent business acts in violation of the UCL. These advertisements were reasonably likely to deceive consumers, and in fact did deceive Plaintiff and Class Members and induce them into purchasing Defendant's Products.

105. Defendant knew its Products were rarely, if ever, actually sold at the higher former price for a three-month period of time preceding Plaintiff' and Class Members' purchases.

106. Defendant had a duty to disclose the truth about its pricing deception, including that the former prices advertised on its website were not, in fact, prices at which Products were listed or sold on the website in the previous three months In truth, the Products never (or rarely) were offered or sold at the former prices.

107. Defendant made these statements with the intention that Plaintiff would see them and rely on them to purchase Products, and, in fact Plaintiff did rely on Defendant's fraudulent misrepresentations on Defendant's website when purchasing the Product.

108. If not for Defendant's fraudulent acts and practices, Plaintiff would not have purchased the Product, or would not have purchased the Product at the price it was listed.

109. As a result of Defendant's conduct, Plaintiff and Class Members suffered substantial injury and lost money.

110.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. As a result of Defendant's fraudulent business acts and practices, Defendant has and/or continues to fraudulently obtain money from Plaintiff and Class Members.

111.    Plaintiff requests that this Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to Plaintiff and members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future.

**SECOND CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq***
**(On behalf of Plaintiff and the Class)**

112.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

113.    Defendant violated Cal. Bus. & Prof. Code §§ 17500 and 17501.

114.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq*., states, in part, that:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, **which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading … .**

Cal. Bus. & Prof. Code § 17500. (emphasis added).

115.    The FAL also provides that:

> For the purposes of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is

30
CLASS ACTION COMPLAINT FOR DAMAGES

at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a ***former price*** of any advertised thing, unless the alleged former price was the ***prevailing market price*** as above defined within ***three months next immediately preceding*** the publication of the advertisement of unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501. (emphasis added).

116.    As used in the FAL:

(a) The term "prevailing market price" refers to the "retail [price] if the offer is at retail."

(b) The term "advertised thing" refers to the exact same product offered—***not*** an equivalent or similar product. *People v. Superior Ct. (J.C. Penney Corp.)*, 24 Cal App. 5th 376, 412 (2019) ("if the advertisement specifies a precise item—say, by reference to name, brand, or other distinctive features … the market and therefore the market price is potentially determined on the basis of sales of ***that item only***.") (emphasis added).

(c) The term " 'former price' … includes but is not limited to the following words and phrases when used in connection with advertised prices: 'formerly—,' 'regularly—,' 'usually—,' 'originally—,' 'reduced from ___,' was ___ now __,' '___% off.'" 4 Cal. Code Regs., § 1301.

(d) The "three-month period is properly construed as a 'rolling' period, that is, one whose beginning and end changes each day, thus requiring a daily recalculation of the prevailing market price during the three-month period." *People v. Superior Ct. (J.C. Penney Corp.)*, 24 Cal App. 5th 376, 416 n.26 (2019).

117.    As alleged more fully above, Defendant advertises former prices along with discounts on its website. Defendant does this, for example, by crossing out a higher price (e.g. $~~150~~) and displaying it next to a lower, discounted price. Reasonable consumers would understand prices

CLASS ACTION COMPLAINT FOR DAMAGES

denoted as regular prices from which time-limited discounts are calculated to denote "former" prices, i.e., the prices that Defendant charges before the discount went into effect.

118. The reference prices advertised as former or regular prices on Defendant's website are not former or regular prices under the FAL. Defendant rarely, if ever, offered Products on the website at the reference prices within three months immediately preceding the publication of the reference prices. Additionally, the reference prices shown were not the prevailing market prices for the Products in the three months immediately preceding the publication.

119. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the false former prices when purchasing from Defendant. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

120. As a result of Defendant's violation of the FAL, Plaintiff and Class Members suffered substantial injury and lost money.

121. Pursuant to Cal. Bus. & Prof. Code § 17535, this Court has the power to award equitable relief, including an order declaring Defendant's pricing scheme for Products to be unlawful, an order enjoining Defendant from engaging in any such further unlawful conduct, and an order directing Defendant to refund to Plaintiff and Class Members all monies wrongfully collected as a result of its false advertisements.

### THIRD CAUSE OF ACTION
**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT ("CLRA")**
**(Cal. Civ. Code §§ 1750, *et seq*.)**
**(On behalf of Plaintiff and the Class)**

122. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

123. Plaintiff and members of the Class are "consumers," as that term is defined by Civil Code § 1761(d), because they purchased Products for personal, family, or household purposes.

124. Plaintiff and Class members have engaged in a "transaction" with Defendant, as that term is defined by Civil Code § 1761(e).

CLASS ACTION COMPLAINT FOR DAMAGES

125.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for purposes of the CLRA, and was undertaken by Defendant in transactions intended to result in, and did result in, the sale of goods to consumers.

126.    As described more fully above, Defendant made and disseminated untrue and misleading statements of fact in its advertisements to Plaintiff and Class members. Defendant did so by using fake former prices, i.e., reference prices that are not the prevailing market price, and/or were not the prevailing market price within the three months preceding the publication of the discount, and advertising fake discounts.

127.    As a result of Defendant's conduct, Plaintiff and Class members purchased Defendant's Products for their use.

128.    By engaging in the conduct described herein, Defendant has violated California Code § 1770(a) by:

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have …

(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

(9) Advertising goods or services with intent not to sell them as advertised.

[and]

(13) Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.

129.    Regarding section 1770(a)(13), Defendant made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because (a) no true price reductions existed because Defendant's Products were rarely, if ever, offered for sale and/or sold on the website at the higher former prices, let alone on a regular basis within the three months immediately preceding the publication of the former prices, (b) the former prices Defendant advertised in connection with its Products are not prevailing market prices because, on information and belief, the Products were not sold elsewhere at the former prices on a regular basis within the

33

three months immediately preceding the publication of the former prices, and (c) Defendant falsely represents the Products as on sale for a limited time, when in truth, it appears they are perpetually sold at advertised "sale" prices.

130.    With regard to sections 1770(a)(5), (7), and (9), Defendant advertised and represented Products on the website with the "intent not to sell" them as advertised and misrepresenting product characteristics and standards because, as explained herein, the false former prices of Products misled and continue to mislead customers into believing the Products were previously offered for sale and/or sold on the website at the higher former prices during the three months preceding the advertisement.

131.    Defendant intended for Plaintiff and the Class to rely on its aforementioned unfair and deceptive acts and practices, including the misrepresentations and omissions alleged above.

132.    Defendant's violations of the CLRA proximately caused injury in fact to Plaintiff and the Class.

133.    Plaintiff reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiff would not have purchased the Product, or would not have purchased the Product the listed price. Plaintiff's reliance was a substantial factor in causing him harm.

134.    Pursuant to Cal. Civ. Code § 1782(d), Plaintiff, individually and on behalf of the Class, seeks a Court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

135.    On or about May 29, 2025, pursuant to Cal. Civ. Code § 1782(a), Defendant was sent in writing, by certified mail, notice of the violations of Section 1770 of the CLRA. The notification demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

136.    Plaintiff sent the CLRA notification letter and Defendant failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all consumers within 30 days of receipt of the CLRA notice. Accordingly, Plaintiff seeks damages, as permitted and appropriate.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff and members of the Class, respectfully request that the Court:

    a. Certify this case as a class action, designating Plaintiff as class representative and designating the undersigned as Class Counsel;

    b. Declaring that Defendant's conduct violates the statutes set forth above;

    c. Award Plaintiff and the Class actual damages in an amount according to proof;

    d. Award Plaintiff and the Class restitution in an amount to be proven at trial;

    e. Award Plaintiff and the Class pre-judgment interest in the amount permitted by law;

    f. Award Plaintiff and their attorneys fees and costs as permitted by law;

    g. Declare Defendant's practices outlined herein to be unlawful;

    h. Grant equitable and/or injunctive relief, including to enjoin Defendant from engaging in the practices outlined herein;

    i. Grant Plaintiff and the Class a trial by jury;

    j. Grant leave to amend these pleadings to conform to evidence produced at trial; and

    k. Grant such other relief as the Court deems just and proper, including all forms of relief provided for under the UCL, CLRA, and FAL.

**JURY DEMAND**

Plaintiff, by counsel, demands a trial by jury.

Dated: August 21, 2025             Respectfully submitted,

**ZIMMERMAN REED LLP**

*/s/ Charles R. Toomajian III*

Charles R. Toomajian III (SBN 302153)
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 341-0400
Fax: (612) 341-0844
charles.toomajian@zimmreed.com

CLASS ACTION COMPLAINT FOR DAMAGES

**ZIMMERMAN REED LLP**
Caleb LH Marker (SBN 269721)
Jessica M. Liu (SBN 358713)
6420 Wilshire Blvd, Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
Fax: (877) 500-8781
caleb.marker@zimmreed.com
jessica.liu@zimmreed.com

**JENNINGS & EARLEY PLLC**
Tyler B. Ewigleben*
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
Tel: (501) 372-1300
chris@jefirm.com
tyler@jefirm.com
winston@jefirm.com

*\* Pro Hac Vice* application to be submitted

*Counsel for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT FOR DAMAGES